IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CARL NEAL                                                                                          PLAINTIFF

v.                                          4:08CV00437 JTR

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration,                                                                    DEFENDANT

**MEMORANDUM AND ORDER**

Plaintiff, Carl Neal, has appealed the final decision of the Commissioner of the Social Security Administration denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), Both parties have filed Appeal Briefs (docket entries #10 and #11), and the issues are now joined and ready for disposition.[1]

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[2] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge. (Docket entry #5.)

[2] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

*Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

In his Disability Report - Adult, Plaintiff alleged that he was limited in his ability to work by anxiety attacks, back and colon problems, and seizures. (Tr. 64.)

After conducting an administrative hearing, during which Plaintiff and a vocational expert testified, the Administrative Law Judge ("ALJ") concluded that Plaintiff had not been under a disability, within the meaning of the Social Security Act,[3] at any time through August 25, 2006, the date of his decision. (Tr. 18-19.) On April 18, 2008, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 5-7.) Plaintiff then filed his Complaint initiating this appeal. (Docket entry #2.)

At the time of the May 10, 2006 administrative hearing, Plaintiff was 44 years old.. (Tr. 247.) He completed the ninth grade in school (Tr. 152, 247), and his has past relevant work included jobs as an assembly line worker, landscape helper, and window washer. (Tr. 70-73, 248, 256.)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. Step 1 involves a determination of whether the claimant is involved in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i) (2005), §416.920. If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. *Id.*, § 404.1520(b), § 416.920.

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment. *Id.*, § 404.1520(4)(ii), § 416.920.

---

[3]"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382(a)(3)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3) & 1382(a)(C)(I).

If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(a)(iii), § 416.920.[4]  If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.*, § 404.1520(4)(iv), § 416.920.  If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 404.1520(4)(v), § 416.920. If so, benefits are denied; if not, benefits are awarded. *Id.*

In his decision (Tr. 14-19), the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since his alleged onset date[5] (Tr. 16); (2) had "severe" impairments, which included a seizure disorder, a mood disorder, a possible bipolar disorder, and a history of alcohol abuse (*id.*); (3) did not have an impairment or combination of impairments that met or equaled a Listing (Tr. 17); (4) was not entirely credible in his statements concerning the intensity, persistence, and limiting effects of his symptoms (Tr. 18); (5) retained the RFC for medium entry-level unskilled work with the need to avoid exposure to unprotected heights and dangerous machinery (Tr. 17); and (6) was able to perform his past relevant work as an assembly line worker or landscape helper. (Tr. 18.) Thus, the ALJ concluded that Plaintiff was not disabled. *Id.*

In his Appeal Brief (docket entry #10), Plaintiff argues that the ALJ erred because: (1) his decision is not supported by substantial evidence; (2) he ignored Plaintiff's alcoholism in contravention of the Court's holding in *Brueggemann*; and (3) he asked the vocational expert a

---

[4] If the claimant's impairments do not meet or equal a Listing, then the ALJ must determine the claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence. *Id.*, § 404.1520(e).  This RFC is then used by the ALJ in his analysis at Steps 4 or 5. *Id.*

[5] Plaintiff originally alleged an onset date of September 1, 2003. (Tr. 55, 64, 237.)  At the hearing, he amended that date to February 21, 2004. (Tr. 14, 246.)

hypothetical question which did not include all of Plaintiff's limitations. Because the Court concludes that Plaintiff's second argument has merit, it need not address Plaintiff's other arguments.

In *Brueggemann v. Barnhart*, 346 F.3d 689, 694-95 (8th Cir. 2003) (emphasis in original) (footnotes omitted), the Court made it clear that, if the medical record reveals that a claimant has a history of alcohol abuse, the ALJ must consider and address the claimant's alcoholism as a limitation relevant to the determination of whether he is disabled:

> The plain text of the relevant regulation requires the ALJ first to determine whether Brueggemann is disabled. 20 C.F.R. § 404.1535(a) ("*If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability" (emphasis added)). The ALJ must reach this determination initially, as the ALJ did in *Fastner v. Barnhart*, 324 F.3d 981, 986 (8th Cir. 2003), using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders. *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001). The ALJ must base this disability determination on substantial evidence of Brueggemann's medical limitations without deductions for the assumed effects of substance use disorders. The inquiry here concerns strictly symptoms, not causes, and the rules for how to weigh evidence of symptoms remain well established. . . . .
>
> If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent. *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000); 20 C.F.R. § 404.1535(b)(2). . . ..
>
> Only after the ALJ has made an initial determination that 1) Brueggemann is disabled, 2) determined that drug or alcohol use is a concern, and 3) obtained substantial evidence on the record showing what limitations would remain in the absence of alcoholism or drug addiction, may he then reach a conclusion on whether Brueggemann's substance use disorders are a contributing factor material to the determination of disability.

The medical record in this case is replete with evidence of Plaintiff's alcohol abuse. For example, as early as November of 1996, Plaintiff's medical records reflect "alcohol abuse." (Tr. 120.) On April 30, 1997, Plaintiff was seen for "blackout spells" and seizures. The medical notes reflect an assessment of "alcoholic seizures and blackout." (Tr. 118.) In a Mental Status and Evaluation of Adaptive Functioning report, dated July 27, 2004, the clinical psychologist noted that Plaintiff: (1) "admits to being a heavy drinker and violent and impulsive behavior while drinking";

and (2) received "ten to fifteen DUI's in as many years."[6] (Tr. 152.) On June 16, 2004, Plaintiff was examined by Dr. John R. Hines. (Tr. 334-35.) During this examination, Dr. Hines discussed with Plaintiff "cessation of alcohol use, . . . tobacco use . . . drug [marijuana] use." (Tr. 235.) In a Psychiatric Review Technique form, dated August 31, 2004, the reviewing psychiatrist found that Plaintiff suffers from "substance addiction disorder."[7] (Tr. 169.)

Given the strong medical evidence that supported Plaintiff being an alcoholic, this would seem to be an important subject for the ALJ to cover in some detail with Plaintiff during the administrative hearing.[8] Yet, the ALJ's questioning of Plaintiff on this point was limited to the following brief exchange:

ALJ: Do you drink?

Claimant: I have before, but not like I used to.

(Tr. 249.) The ALJ asked no follow-up questions to determine how much Plaintiff drank "before" and how much he now drinks.

While the record contained strong evidence of Plaintiff's chronic alcohol abuse, the ALJ essentially chose to ignore the issue in his decision. After finding that "a history of alcohol abuse" was one of Plaintiff's "severe impairments" (Tr. 16), the ALJ makes only *one* other mention of the subject and that is in the context of attempting to minimize the significance of Plaintiff's well documented seizure disorder: ". . . it was medically assessed that the seizures [Plaintiff suffered from] were related to [his] alcohol abuse." (Tr. 18.)

Once the ALJ found Plaintiff's history of alcohol abuse to be a severe impairment, he was required to address that issue in accordance with the Court's holding in *Brueggemann*. His failure

---

[6] As a result of these DUI's, Plaintiff is no longer permitted to drive. The duration and frequency of these DUI's is strong evidence that Plaintiff has a very serious problem with alcohol.

[7] In another Psychiatric Review Technique, dated November 4, 2004, a different psychologist also diagnosed "substance abuse disorder" (Tr. 197) and "alcohol abuse by history." (Tr. 205.)

[8] At the beginning of the administrative hearing, Plaintiff's complete medical history was introduced into evidence as Exhibits 1A through 14F.

to perform the required *Brueggemann* analysis constitutes reversible legal error.

On remand, the ALJ should update the medical record. He also should fully develop the duration and extent of Plaintiff's problems with alcohol during the next administrative hearing. Finally, in deciding if Plaintiff is disabled, the ALJ must follow the steps outline by the Court in *Brueggemann*.

IT IS THEREFORE ORDERED THAT the Commissioner's decision is reversed and this matter is remanded to the Commissioner for further proceedings consistent with this opinion. This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 12th day of August, 2009.

_____
UNITED STATES MAGISTRATE JUDGE